HEIDENHEIMER et al. v. CAMP et al.

(Court of Civil Appeals of Texas. Austin. Dec. 20, 1911. On Rehearing, Jan. 17, 1912.)

SALES (§ 130*)—CONTRACT—RESCISSION.

Where plaintiff sold defendant certain nuts which were to be shipped from New York to Texas by water and they were returned to defendant by purchasers as unmerchantable, evidence *held* insufficient to entitle defendant to rescind the contract therefor.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 130.*]

Appeal from Travis County Court; R. E. White, Judge.

Action by W. A. Camp and others against I. Heidenheimer, Jr., and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Fiset & McClendon, for appellants. L. A. Hill, for appellees.

JENKINS, J. Appellees are wholesale dealers in nuts in New York City. Appellants are wholesale dealers in nuts and other commodities in Austin, Tex. Appellants ordered of appellees 1,850 pounds of Cornes walnuts. Shortly after the same were received in Austin, and after appellants had sold a portion of said walnuts, they discovered that the same were rancid, unsound, and not merchantable. The most of the walnuts sold by them to their customers were returned. However, $50.96 worth were paid for by their customers, which amount they remitted to appellees, and notified them that the remainder of the walnuts were held subject to their order. Appellees sued to recover the purchase price of the walnuts, less the $50.96. Appellants by amendment alleged that appellees, subsequent to the filing of this suit, sued out an attachment in the state of New York, and levied on certain goods belonging to appellants in that state, and caused the same to be sold under said attachment, to their damage $600.

Appellees in their supplemental petition alleged that the walnuts sold by them to appellants were to be delivered and were delivered to the steamship company in New York; that when so delivered they were sound, sweet, and merchantable nuts; that appellants knew at the time that they purchased said walnuts that they were of the previous year's crop, and were in cold storage. They also alleged that walnuts kept in cold storage would rapidly deteriorate when exposed to heat above 45 degrees Fahr., and that if said walnuts became rancid it was by reason of their exposure to heat after they were delivered to appellants. They admitted that they had received from the attachment proceedings in New York all that was due them, except the sum of $12, for which they asked judgment in this case. There was a

jury trial and judgment rendered for appellees in the sum of $12.

Appellants file but one assignment of error, and that relates to the charge of the court, and is in reference to the right of appellants to disaffirm the contract. In said charge the court informs the jury that if appellants did certain acts after receiving said nuts in their store, that the same would amount to a waiver of their right to rescind the contract. The jury might or might not, under the testimony in the case, had a proper charge been given, have found that appellants had waived their right to rescind the contract; but we think the court was in error in instructing the jury that the facts stated in said charge would amount, as a matter of law, to a waiver of their right to rescind the contract. We do not think, however, that said erroneous charge demands a reversal of this case, for the reason that the undisputed evidence is that said walnuts were to be delivered to appellants f. o. b. New York, and that they were delivered in accordance with said contract, and that when so delivered they were sound and merchantable. This is testified to, not only by appellees and their employés, but by one Allen, a disinterested witness, who was and for 20 years had been a dealer in such nuts in the city of New York, and who purchased nuts from the same stock as that shipped to appellants, and who examined the nuts shipped to appellants at the time of their shipment.

The undisputed evidence is that walnuts which have been kept in cold storage will rapidly deteriorate when exposed to heat above 45 degrees Fahr. It was shown by the testimony of Prof. Alexander Deusen of the University of Texas, that for the months of November and December, 1907, the time when said nuts were shipped and in possession of appellants, the average temperatures at Austin, Texas, were as follows: For November, average maximum, 60 degrees; average minimum, 49 degrees; for the month of December 1907, the average maximum was 60 degrees, and the average minimum was 45 degrees. It was further shown by the testimony of Mr. Heidenheimer that in some parts of a ship the temperature is very high, and there is no evidence showing in what parts of the ship these walnuts were stored en route. There was no evidence as to the condition of these walnuts when they arrived in Austin. Mr. Heidenheimer was not in Austin when they arrived, and never examined the nuts until some of them were returned by his customers some time after their arrival.

Such being the undisputed evidence the appellants had no right to rescind said contract, for the reason that appellees had fully complied with the same; and therefore, the erroneous charge of the court as to their

waiving such right, which never existed, was immaterial.

For the reasons herein stated, the judgment of the trial court is affirmed.

Affirmed.

## On Rehearing.

The motion for a rehearing in this case is overruled, for the reason, in addition to those given in the opinion herein, that the evidence does not identify the walnuts shown to have been worthless as the ones sold by appellees to appellants.

Motion overruled.